Terrell **WALTERS** and Joseph Ganci, and all others similarly situated, Plaintiffs,

v.

Governor James **EDGAR**, Odie Washington, Keith Cooper, Dwayne A. Clark, Sergio Molina, Glenn Johnson, Thomas Page, Richard Gramley, George De Tella, and Peter E. McElhinney, Defendants.

No. 82 C 1920.

United States District Court, N.D. Illinois, Eastern Division.

June 27, 1997.

---

James P. Chapman, Fagel & Haber, Chicago, IL, for plaintiff.

Gary Michael Griffin, Cara LeFevour Smith, Illinois Atty. Gen. Office, Chicago, IL, Carol L. O'Brien, Illinois Dept. of Corrections, Chicago, IL, Debra J. Anderson, Office of Special Deputy, Chicago, IL, for defendants.

## MEMORANDUM OPINION

BUCKLO, District Judge.

On August 28, 1995, I issued an opinion finding that inmates in segregation at three

Illinois maximum security correctional centers, Menard, Joliet and Pontiac prisons, did not have reasonable access to court. I found that plaintiffs had failed to prove that inmates at Dixon Correctional Center did not have access to court. I deferred making findings regarding Stateville Correctional Center until after a supplemental hearing limited to specific issues. That supplemental hearing was held on November 9, 1995, and the parties thereafter submitted memoranda. The parties also submitted memoranda on the question of an appropriate remedy for the institutions as to which I had found violations existed.

Meanwhile, on May 22, 1995, the United States Supreme Court had taken *certiorari* in *Casey v. Lewis*, 43 F.3d 1261 (9th Cir. 1994), a case that involved many of the same issues raised by the present case, and on which I had relied in reaching several conclusions. I decided that my decision on remedy and findings with respect to Stateville should wait for the Supreme Court's decision in *Casey*. In that decision, announced on June 24, 1996, *Lewis v. Casey*, —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606, the Supreme Court reversed the Ninth Circuit and substantially changed the law that had evolved in lower court decisions interpreting prior Supreme Court decisions on prisoner access to the courts. On June 27, 1996, I set a status hearing to discuss the effect of the Supreme Court's decision on the pending case. Following that hearing, concluding that the plaintiffs could not have expected at least that part of the decision that required the named plaintiffs to have proved individual prejudice at trial,[1] and in view of the amount of work and time that had gone into this case, I allowed the plaintiffs to reopen the testimony to attempt to meet the requirements of *Lewis v. Casey*.[2] This opinion represents my supplemental findings and

1. Four justices disagreed with the majority's conclusion in this regard. Justice Souter, writing for himself and two other justices, also noted that various circuits, including the Seventh Circuit in *Jenkins v. Lane*, 977 F.2d 266, 268–69 (7th Cir. 1992), previously had held that a prisoner did not need to show actual prejudice ("harm") where the allegations were of continuous and substantial limitations on meaningful access to the courts. —— U.S. at —— n. 2, 116 S.Ct. at 2204 n. 2.

2. Unfortunately, a fire that destroyed plaintiffs' law office, and most of their records having to do with this case, delayed the hearing until the end of February, 1997.

conclusions following that testimony and defendants' rebuttal.

Although this opinion assumes the reader is familiar with my prior opinion, since the importance of the supplemental hearing and my findings with respect to it need to be placed in the context of the Supreme Court's decision in *Lewis v. Casey*, I will begin with a review of that decision. Interpreting the Supreme Court's decision in *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), in which the Court had held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," the district court and Ninth Circuit had held that Arizona failed to provide inmates with adequate access to the courts because of various shortcomings. The district court entered a wide ranging remedial order which was affirmed by the Ninth Circuit. *Lewis v. Casey*, like the present case, was a class action brought on behalf of prisoners in various correctional institutions. In reversing the lower courts, the Supreme Court did not reject its earlier holdings that prisoners have a constitutional right of access to the courts (although it made clear that this right was limited to cases in which a prisoner desired to challenge his sentence or conditions of confinement),[3] but the majority imposed two significant procedural limitations in class actions.[4] First, the Court held that named plaintiffs in a class action must not only allege but prove that they suffered actual injury of the type for which they seek a remedy. This meant, according to the majority, that named plaintiffs must prove, for example, that they had lost a court case because they could not have known of some requirement due to deficiencies in the legal assistance with which they were provided, or that they could not file a complaint because of inadequacies in a library or legal assistance and therefore "suffered arguably actionable harm." —— U.S. at ——, 116 S.Ct.

at 2180. Second, the court held that system-wide relief could only be ordered for widespread violations of the specific type suffered by named plaintiffs. *Id.* at ——, 116 S.Ct. at 2184.

■ A majority of the Supreme Court characterized the first requirement as jurisdictional, involving standing. While it is clear that a majority of the Court would not confer standing on the basis of a frivolous claim, *see* —— U.S. at —— and n. 3, 116 S.Ct at 2181 and n. 3, the actual injury requirement appears to be satisfied by allegations and proof that a plaintiff wanted to present and was unable to present a claim having arguable merit. *Id.* In a class action, if one of the named plaintiffs satisfies this requirement at trial, standing as articulated by the majority is satisfied. A court can then look at injuries suffered by other plaintiffs of the same type in determining the scope of appropriate relief. *Id.* at ——, 116 S.Ct. at 2183.

■ Conversely, unless a plaintiff presents some proof that his claim has merit, the requirement is not satisfied. Plaintiffs rely on cases such as *Gentry v. Duckworth*, 65 F.3d 555, 559 (7th Cir.1995), decided prior to *Lewis v. Casey*, in which the Seventh Circuit held that at the pleading stage, only patently frivolous cases should be dismissed. The present decision follows trial. In that respect, while plaintiffs need not prove that they would have prevailed in their underlying claims, they must show they have arguable merit. *Lewis v. Casey*, —— U.S. at —— n. 3, 116 S.Ct. at 2181 n. 3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, ..."). *Accord, Pilgrim v. Littlefield*, 92 F.3d 413, 416, 417 (6th Cir.1996) (both majority and dissent agreeing that in a denial of access case following *Lewis v. Casey*, plaintiff must

---

3. Since my earlier opinion was so limited, I need not discuss this holding further.

4. The opinion also found error in the procedures followed by the lower courts in implementing a remedy. Those portions of the opinion are not in issue here.

plead and prove prejudice as a result of the alleged violation).

■ Named plaintiffs Terrell Walters and Joseph Ganci did not testify in the trial in this case, nor in the supplemental evidentiary hearing limited to Stateville. No other evidence was offered to prove their individual claims of harm. Accordingly, under *Lewis v. Casey*,[5] unless at least one of them has satisfied the standing requirement articulated in that case in the most recent supplemental hearing, this case must be dismissed in its entirety. .

## I.

Joseph Ganci is a 49 year old man who has been imprisoned since 1976 on convictions of murder and attempted murder. At various times he has been housed in each of the correctional institutions involved in this case. At trial[6] he testified regarding numerous claims that he either wanted to bring or brought unsuccessfully. Since in their post-trial memorandum, however, plaintiffs have discussed only two of those claims, I am assuming plaintiffs are not pursuing any other claim and I will not discuss any other claim.

■ The first issue raised by Mr. Ganci is that he was unable in a timely fashion to raise, either in a post-conviction or habeas corpus petition, a claim that at his criminal trial the court instructed the jury on his theory of self-defense under instructions that have since been held to have improperly shifted the burden of proof from the State to the defendant. *People v. Reddick*, 123 Ill.2d 184, 526 N.E.2d 141, 122 Ill.Dec. 1 (1988). Mr. Ganci says he never was able to obtain a new trial on this issue because by the time he obtained sufficient help to raise the issue the Illinois Supreme Court had ruled that its holding in *Reddick* was not retroactive, *see People v. Flowers*, 138 Ill.2d 218, 561 N.E.2d 674, 149 Ill.Dec. 304 (1990), and the United States Supreme Court held that the jury instructions about which Mr. Ganci complains

did not provide a right to relief pursuant to a petition for habeas corpus. *Gilmore v. Taylor*, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993). Mr. Ganci filed a post-conviction petition in 1986, the dismissal of which was affirmed by the Illinois appellate court in 1993. The appellate court ruled against Mr. Ganci on the basis of *Flowers* and *Gilmore*.

Mr. Ganci's claim of prejudice insofar as it relates to this case depends first, on whether there is proof that he would have presented an arguably meritorious claim for a new trial if he had been able to raise the claim earlier, and second, whether he was in segregation during the applicable time period. Unfortunately, Mr. Ganci can prevail on neither of these issues. As Mr. Ganci notes, the legal question raised by him regarding the jury instructions was held not to provide a basis for habeas corpus. Since, in addition, the Illinois Supreme Court decided that it would not make its ruling in *Reddick* retroactive, the only way Mr. Ganci would have obtained the benefit of the ruling was to raise it in his direct appeal, presumably obtaining the same ruling as in *Reddick*. Mr. Ganci did not do so, however. *People v. Ganci*, 57 Ill.App.3d 234, 14 Ill.Dec. 798, 372 N.E.2d 1077 (1978). Mr. Ganci was represented by counsel on that appeal. The fact that counsel represented him on appeal, however, satisfies the requirements of *Bounds v. Smith*.

Even if Mr. Ganci could overcome the fact that he was represented by counsel during the relevant appeal, Mr. Ganci's claim that he suffered prejudice through denial of access to the court to challenge the jury instructions under which he was convicted suffers from a second problem. During some of the period during which Mr. Ganci says he needed assistance he was not in segregation. This suit is limited to prisoners who were denied access to courts as a result of conditions peculiar to the fact that they were in segregation. If an inmate would have had the same access to the courts as any other inmate in the general population, he is not part of this suit. In this

---

**5.** There can be no question that *Lewis v. Casey* applies to this case. It was decided before a final order was entered in this case. In addition, the majority opinion indicates that satisfaction of the requirements at issue here is jurisdictional.

**6.** In this context, the reference to trial is to the supplemental trial testimony heard in February, 1997.

case, while Mr. Ganci was in segregation during substantial periods of time, he has not shown that he could not have filed or pursued either the post-conviction petition or a petition for habeas corpus during times when he was in the general population.

■ Mr. Ganci also argues that he was unable effectively to bring a second claim in court as a result of inadequate legal assistance. This claim involves a loss of a year's "good time" as a result of an Adjustment Committee decision in 1983. Mr. Ganci says that at that time he held a correctional officer at knife point. When he was charged with an offense before the Adjustment Committee as a result, he believed he would also be charged criminally, and therefore refused to speak without consulting with a lawyer. He argues that the failure to provide him counsel in a situation in which he might have been charged with a criminal offense as well as before the Adjustment Committee violated his right to have counsel represent him. But the Supreme Court has long held that a defendant does not have a right to counsel at a prison disciplinary hearing. *Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974). Furthermore, Mr. Ganci has not shown that if he had had an attorney there is any basis for believing there would have been a different outcome in his disciplinary hearing. He does not deny the conduct of which he was accused and his statement at trial as to what he would have told the Adjustment Committee if he had felt free to speak does not provide a defense. Indeed, it seems likely that an attorney would have advised him not to speak—the same action he decided on without counsel. Thus the action he says he would like to have brought to challenge his loss of "good time" has not been shown to even arguably have merit.

## II.

Terrell Walters' situation differs from Mr. Ganci's in some significant respects. In the first place, evidence at trial showed that Mr. Walters, who has been in custody since he was 15 years old (he is now 39), tested lower in reading level than 99 percent of all people who take the GED test, which he failed in 1988.[7] In addition, Mr. Walters was in segregation virtually at all times from 1977 until 1991. During that time he was transferred among each of the prisons involved in this case.

Despite his segregation status and despite his tested reading level, Mr. Walters has attempted repeatedly to seek relief in state and federal court for various complaints. The question under *Lewis v. Casey* is whether he has shown arguable prejudice caused by lack of access to the courts.

■ In his post-trial memorandum, Mr. Walters has articulated numerous instances in which he argues that he was denied access to court. The first consists of a claim by Mr. Walters that he was denied medical attention while in segregation at Joliet in 1982 brought in the Northern District of Illinois, Case No. 82 C 3162. Judge Moran dismissed this claim on November 16, 1982, after giving Mr. Walters extra time to file a response to a motion to dismiss, when Mr. Walters did not respond. At trial Mr. Walters testified that he did not file any response because he did not understand what he was supposed to do. Mr. Walters' testimony, however, also failed to show that he had a nonfrivolous claim. He testified only that at the time he had a kidney problem and was denied medical help. He provided no details (not even testifying how severe the problem was or what he did to get medical help or whether he was ever given help, etc.) that would lend credibility or substantiation to the bare claim.[8]

---

7. On the other hand, I have now read all of the legal papers drafted by Mr. Walters and submitted as evidence in the supplementary hearing. While I assume he would have trouble reading legal opinions, given the evidence in the earlier trial about the level of reading required to digest legal materials, he was able to state his complaints well enough. That of course does not mean he would be able to respond to every, or perhaps even most, legal motions but he is clearly intelligent.

8. I also note that in this same period, Mr. Walters received help in the present case from an inmate law clerk who filed a typed response to a motion to dismiss, drafted and filed an amended complaint and other pleadings. While it is certainly possible that the law clerk would not help on another suit, it casts doubt on Mr. Walters'

■ Mr. Walters' second claim concerns a lawsuit filed in April 1983 in this district, entitled *Walters v. Lane*, No. 83 C 2333. In this suit, Mr. Walters alleged that he was moved from one segregation cell to a more restrictive cell, sprayed with an unknown chemical that irritated his eyes, refused water to wash off the chemical, not given bedding for several days, and denied his personal property including legal materials. This complaint was drafted and typed by another inmate, a law clerk named Russell Baker. It quite clearly states Mr. Walters' complaint. This complaint was dismissed on Mr. Walters' motion soon after it was filed. Mr. Walters testified that he was told by an Assistant Attorney General for the State of Illinois that the harassment he was complaining about would stop if he would dismiss the lawsuit (which had been brought as a class action). In December, 1983, Mr. Walters, apparently unhappy with his decision or believing that defendants had not lived up to their promise, filed a motion for default against defendants. This motion was denied based on the earlier dismissal of the case. Mr. Walters says that he did not know what to do and that this was the reason for his motion for a default. Based on the many subsequent lawsuits filed by him, however, I think he either did file another lawsuit (which was the correct action to take since the suit was dismissed without prejudice) or would have if he continued to feel aggrieved as he had stated. Indeed, in his testimony he also stated that he refiled the suit "on other matters."

■ Mr. Walters' third claim concerns another case filed in 1983 while he was at Joliet, *Walters v. Fairman*, No. 83 C 2808, also filed in the Northern District of Illinois and assigned, as were all of Mr. Walters' cases until 1987, to Judge Moran. This case was apparently dismissed for want of prosecution when Mr. Walters did not respond to a motion to dismiss. However, at trial Mr.

Walters provided no evidence to show that this claim was meritorious.

■ Mr. Walters' fourth claim, entitled *Walters v. Cowan*, No. 86 C 1185, involving allegations of unjust punishment and harassment, was filed on Mr. Walters' behalf by retained counsel (apparently Mr. Walters' present lawyers obtained separate counsel for him on this claim). Mr. Walters received a cash settlement in this case and obviously had access to court.

■ Mr. Walters' next claim involves a lawsuit filed in 1986 entitled *Walters v. Lane*, No. 86 C 5739. Mr. Walters alleges that he was denied due process in not being allowed counsel at disciplinary hearings or the right to call witnesses. He also alleges that the hearings were unfair because they were conducted by friends of the officer bringing the charges. Mr. Walters' complaint was dismissed after he failed to specify which disciplinary proceedings he was challenging as unfair. There is no right to counsel at disciplinary hearings, as previously noted. With respect to the remainder of the claim, while Mr. Walters testified about the complaint at trial, he did not attempt to connect it to a particular disciplinary hearing or hearings or to prove facts that would show that the claim had merit.[9]

■ *Walters v. Fairman*, No. 86 C 5879, is also referred to only by attachment of the docket sheet to Mr. Walters' post-trial memorandum and the reference that this was another case in which he wanted to challenge the conditions of his confinement. The docket sheet indicates that counsel was appointed to represent him and that even before that time a motion to dismiss was denied in part. Thus, the little information in the record before me supports defendants' claim that Mr. Walters' access to the courts in this case was unimpeded.

■ Mr. Walters also points to two other lawsuits, Nos. 87 C 1242 and 87 C 1243,

claim that he could obtain no help in his suit. Furthermore, during this same period also Mr. Walters himself wrote 198 interrogatories in the present case. They are quite intelligently drafted.

9. Since, so far as I can tell, except for the fact that the docket sheet in this case is attached to the post-trial memorandum, it is not otherwise discussed, I am not certain that Mr. Walters continues to maintain that this is an example of a time when he was denied access to court.

which he voluntarily dismissed without prejudice, as examples of non-frivolous claims that he was unable to pursue because of his own inability and lack of counsel. Both complaints allege assaults on plaintiff by guards. Each quite clearly and coherently states a claim. Defendants filed an answer. Plaintiff's request for the appointment of counsel was denied, however. Apparently in response (at least the several page document filed by plaintiff seeking dismissal gives this indication), Mr. Walters asked to have the case dismissed. At trial, Mr. Walters did not attempt to prove that the claims were meritorious. Nor did he offer any explanation as to why he had decided that he could not defend the lawsuits at a time when there was not a motion pending. He did admit, however, that at the time these suits were pending he was represented by counsel not only in the present lawsuit but by counsel in 86 C 1185, which also alleged physical assaults on plaintiff by guards. In light of the limited testimony by Mr. Walters with regard to these cases at trial, and the record concerning both the status of these cases at the time Mr. Walters moved for their dismissal and the fact that Mr. Walters was represented by counsel in two other cases at the time that he alleged he was being mistreated by guards, I am unable to credit Mr. Walters' claim that he was denied access to the courts in these instances.[10]

All of the above claims were filed in this district while Mr. Walters was at Joliet. Mr. Walters also claims that he was denied access to the courts while he was in segregation at Menard. He says he wanted to complain about the conditions of his confinement, which included extremely cramped cells with all steel doors and little ventilation, and which were extremely cold in winter. He says he was also deprived of cleaning supplies and personal hygiene items. He says he was not allowed exercise out of his cell. Mr. Walters says he did file two administrative grievances concerning these complaints, which were denied, and filed a lawsuit in the Northern District of Illinois, which was dismissed because it was brought in the wrong district. The administrative grievances adequately set forth Mr. Walters' complaints. One of them is signed by a number of inmates who apparently shared Mr. Walters' complaints. Having read them, it is not clear that the facts stated in the complaints would support a section 1983 claim for a violation of constitutional rights. The prisoners complain of such things as being denied cleaning supplies and sufficient hygiene items. There are obvious security issues involved in giving segregation inmates cleaning supplies and plaintiffs do not appear to say that they were not given any hygiene items (they complain for instance of getting only one roll of toilet paper a week, not that they are allowed no paper). Mr. Walters' pro se complaint in federal court does, however, go further, alleging that he or others (this is not entirely clear) had been confined in a control cell in segregation containing standing water, garbage left for long periods, bugs, and dirty mattresses. At trial, Mr. Walters testified that he filed this complaint in 1992 after being confined in the control cell at Menard from November, 1992 until his transfer sometime in 1993. Mr. Walters' complaint is difficult to read, largely because of the handwriting but also because of the way it is drafted, but the facts stated in it are sufficient to state a claim. Because it was filed in this district, however, rather than the Southern District of Illinois, where Menard is located, it was apparently dismissed (the document submitted in evidence does not have a

---

10. At trial, in response to defendants' argument that since Mr. Walters has been ably represented by three attorneys in this case since June, 1984, he clearly had access to the courts since that time with respect to any of his complaints, plaintiffs' counsel noted that they did not and could not be expected to represent Mr. Walters (or Joseph Ganci) in every legitimate complaint either might have respecting conditions of confinement or their sentences. Particularly considering the burden that this lawsuit has been on these attorneys, I agree with counsel. Nevertheless, a beating such as alleged in the lawsuits in question at a time when Mr. Walters was the named plaintiff in a class action challenging conditions at every Illinois maximum security prison would seem so clearly to involve a potential interference with that lawsuit that I am unable to believe that counsel would simply ignore a meritorious claim of that sort if brought to their attention. Indeed, counsel for plaintiffs in this case found counsel to represent Mr. Walters and Mr. Ganci in *Walters v. Cowans*, No. 86 C 1185, 1987 WL 10301, discussed earlier.

number so I cannot determine if that is actually the case, or why it was not simply transferred to the appropriate district). Following this, Mr. Walters filed an action in the Seventh Circuit, asserting the same facts. The Seventh Circuit dismissed the case since it was not the appropriate court in which to file a complaint.

While Mr. Walters argues that this is a case that supports his claim that because of his limited abilities he was denied access to the courts, I am unable to agree for two reasons. First, in the complaint filed in the Seventh Circuit, Mr. Walters notes that in 1980 Chief Judge Foreman of the Southern District of Illinois had found that conditions existing in control segregation cells at Menard were inadequate. This would seem to show that Mr. Walters understood that the Southern District of Illinois was an appropriate court in which to seek relief with respect to conditions at Menard. Second, in my earlier opinion I indicated skepticism about changes made by defendants either just before or during trial. I have similar questions about claims made by Mr. Walters in this instance. The complaint under discussion was filed by Mr. Walters after the main part of the trial in this case had concluded and while the parties were in the midst of preparing findings of fact and conclusions of law. Contrary to Mr. Walters' claim now, he most certainly had access to counsel at least for the purpose of inquiring as to the proper court at that time.[11] He also had access to this court to make a complaint if he was being confined in the conditions he complains of at a time when this case was actually on trial. While Mr. Walters may say that he did not know this, having read his many complaints and other pleadings, as well as administrative complaints, and observed him in court, I am unable to believe he is that unsophisticated. I conclude that this claim is not credible.[12]

■ Mr. Walters also says that he has been denied access to the courts to challenge actions by two state courts. The first arose out of a trial in which Mr. Walters was convicted, in 1982, of unlawful restraint of a correctional officer. At the trial, the Department of Corrections stated that it would not provide security unless the trial court agreed to have Mr. Walters shackled during pre-trial proceedings and the trial of the case. The trial judge agreed, and Mr. Walters was convicted by a jury. Mr. Walters, represented by counsel, argued on appeal that the trial court had allowed the Department of Corrections to usurp its authority. The appellate court disagreed, and found that shackles under the circumstances were appropriate. Specifically, the court noted that twelve other defendants were also named in the indictment, that the indictment followed a takeover of part of a prison by the defendants, and that tear gas previously had had to be used in the courtroom to restore order when all of the defendants had been present. Mr. Walters complains that the state appellate defender refused to take his complaint to the Illinois Supreme Court and that he did not know how to do so himself or to file a petition for habeas relief with respect to his complaint. Mr. Walters does not cite any authority that would support his argument that this claim has any arguable merit, however, and, having read the Illinois appellate court opinion, I find no merit in his claim.

■ Mr. Walters also says he was unable adequately to present a complaint in state court challenging the revocation of "good time" or to file an appeal of the circuit court's dismissal of his claim. (The appellate court dismissed his claim for failure to follow procedural rules.) A miscalculation of the time a person is required to remain in prison is certainly one of the most serious claims that an inmate could have. It also seems to be the kind of claim that an inmate could not present very well by himself, at least unless

---

11. At trial, he testified that he did not ask his counsel for advice in filing his complaint despite the fact that the Court of Appeals had advised him to seek the assistance of counsel.

12. Mr. Walters' credibility at least with respect to this claim is undercut for an additional reason.

If I understand counsel, Mr. Walters' claim in the district court did not have a caption. I have read a lot of complaints filed by Mr. Walters. He most certainly knows how to caption a complaint.

he had much greater skills than have been shown by, or would be expected of, a person with Mr. Walters' background. Unfortunately, Mr. Walters has not presented any evidence to show that his claim is even arguably meritorious.

■ Mr. Walters' final claim of denial of access is that he was never able to bring a post-conviction petition or petition for habeas corpus challenging a denial of due process at the time of his original arrest. At that time, Mr. Walters says he was questioned and signed a statement without the presence of his mother, although he was a juvenile. A claim based on this fact was not raised at Mr. Walters' trial nor on his direct appeal, in both of which he was represented by counsel. In this proceeding, Mr. Walters has not shown any basis for believing that it would be accepted by any court. Neither has Mr. Walters shown that he ever attempted to raise this claim.[13] He says he drafted, or obtained help in drafting, three habeas corpus petitions, but none are alleged to have argued this issue. As I understand Mr. Walters' claim on this issue, it is that if he had had better help, someone would have raised the claim. But this is really an argument that Mr. Walters had a right to counsel in filing a post-conviction petition or habeas corpus petition (and yet neither his lawyer in his criminal trial nor counsel on appeal thought of the issue) rather than an argument that Mr. Walters has been denied access to the courts.[14] Since the courts have held that a prisoner does not have a right to counsel on post-conviction petitions and habeas corpus proceedings, however, and Mr. Walters has neither shown a basis for a conclusion that the claim would have merit nor that he attempted to present this claim in any of the three habeas petitions drafted by him, the fact that the first two petitions may never have been filed and the third was dismissed because barred by the statute of limitations does not present an issue of denial of access to court.

### III.

My conclusion after trial is that neither Mr. Ganci nor Mr. Walters has shown any prejudice as a result of denial of access to the courts. In their offer of proof filed at the time I was considering whether to reopen the testimony, plaintiffs argued that very little proof was found sufficient to satisfy the requirements in *Lewis v. Casey*. I have looked at the pages cited by plaintiffs in the district court opinion in that case, however, and there is insufficient information upon which to draw any conclusions. On the proof before me I am forced to conclude that neither named plaintiff has forfeited a non-frivolous claim because of lack of access to court (as that phrase was limited in *Lewis v. Casey*, which clearly restricted the substance of access as well).

The changes in what had previously been understood to be required under the Constitution announced by *Lewis v. Casey* mean that years of work—amounting to thousands of hours—by plaintiffs' counsel, working without pay, will not lead to any change in a system that I previously concluded provided illiterate inmates, if not named plaintiffs, with inadequate access to courts as that term had been defined in earlier cases interpreting *Bounds v. Smith*. It may be that if the named plaintiffs' claims of inadequate access do not stand up to scrutiny, the claims of others are likely hollow as well. But I previously found, based on the testimony of experts, paid staff and inmate clerks, that many inmates are unable even to understand the procedures necessary to file a grievance or fill out or send a form to a court to begin a complaint. Inmates like Mr. Ganci and Mr. Walters are articulate enough, intelligent enough or persistent enough that their claims will be heard. The dissenters in *Lewis v. Casey* argued that whether their actual claims of inadequate access had merit should not prevent them from having standing to argue the claims of others: they clearly cared enough about the outcome that stand-

---

13. His present attorneys apparently are raising the claim in a petition filed in 1995.

14. Mr. Walters' claim that he had a right to sufficient help to discover this grievance was specifically rejected by the Supreme Court in *Lewis v. Casey*, —— U.S. at ——, 116 S.Ct. at 2181.

ing as earlier articulated in *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), is satisfied. Certainly the years of litigation in this case show that the "dispute sought to be adjudicated ... [has been] presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Id.* at 101, 88 S.Ct. at 1953. Under the rule announced in *Lewis v. Casey*, inmates who because of illiteracy, language problems or other reasons are unable to have a claim heard are unlikely also to be able to complain about lack of access to the courts. As the dissenters in *Lewis v. Casey* noted, the inability to obtain class wide relief in a case such as this may also lead to more individual suits.

I am nevertheless bound by my understanding of the Supreme Court's decision in *Lewis v. Casey*. Accordingly, based on the findings articulated in this opinion, this case will be dismissed.[15]

---

**15.** I am aware that at least one of the plaintiffs' counsel in this case, James P. Chapman, has received public recognition for the work he has done in prisoner litigation. All three attorneys, James P. Chapman, Alan Mills and Margaret Byrne, have provided extraordinary work in this case: not only in court and in writing briefs but in traveling to distant correctional facilities, preparing evidence, and advocating on behalf of persons who have few advocates. They have represented the legal profession at its best in their efforts in this case.