Terrell **WALTERS** and Joseph Ganci, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

James **EDGAR**, et al., Defendants–Appellees.

No. 97–2722.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1998.

Decided Dec. 15, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 20, 1999.

James P. Chapman, Alan S. Mills (argued), Margaret Byrne, Chicago, IL, for Plaintiffs–Appellants.

Deborah L. Ahlstrand, John P. Schmidt (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

POSNER, Chief Judge.

This is a long-running class action (first brought in 1982, and certified as a class action in 1985) by inmates of the segregation wards in Illinois' maximum security prisons. These inmates claim that prison officials have blocked their access to the courts in violation of the due process clause of the Fourteenth Amendment as interpreted in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). After a trial conducted in 1991 and 1992, the district judge found that their right of access had indeed been infringed. *Walters v. Edgar*, 900 F.Supp. 197 (N.D.Ill.1995) (see also *Walters v. Thompson*, 615 F.Supp. 330 (N.D.Ill.1985), finding infringement but denying a preliminary injunction). But after the Supreme Court decided *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the judge dismissed the suit on the ground that the named plaintiffs did not have standing to maintain it, *Walters v. Edgar*, 973 F.Supp. 793 (N.D.Ill. 1997), precipitating this appeal.

■■■ The plaintiffs argue that even if they do lack standing, the suit should not have been dismissed but instead other members of the class should have been named as the class representatives. This would indeed have been the proper course if something had happened to deprive the named plaintiffs of standing (or otherwise to render them inappropriate representatives of the class) *after* the suit had been filed, provided that two conditions were satisfied: that the suit had been certified as a class action, which would make the unnamed class members parties to the suit unless and until they opted out; and that at least one of these unnamed class members had standing. *County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52,

111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Sosna v. Iowa*, 419 U.S. 393, 401, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Nelson v. Murphy*, 44 F.3d 497, 500 (7th Cir.1995). What would have saved the suit from dismissal had these two conditions been satisfied would not have been the principle that jurisdiction once acquired is not defeated by a change of circumstances. *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824) (Marshall, C.J.); *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir.1998). Were that principle applicable, there would be no need to find a class member with standing when the original named plaintiffs lost their standing after the suit was filed. Like most legal generalizations, however, the principle that jurisdiction once acquired is not defeated by a change of circumstances is not exceptionless. The chief exception is that the existence of a case or controversy in the Article III sense, that is, a real dispute between parties with tangible stakes in the outcome, *Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, ——–——, 118 S.Ct. 1003, 1016–17, 140 L.Ed.2d 210 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), must be continuous from the beginning of the suit to the end. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396–97, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). If a case becomes moot, the court loses jurisdiction, even though the case was not moot when filed.

If the district judge was right, these plaintiffs never had standing to bring this suit, and so federal jurisdiction never attached. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sample v. Aldi Inc.*, 61 F.3d 544, 551 (7th Cir.1995); *Holmes v. Fisher*, 854 F.2d 229, 232–33 (7th Cir.1988); *Johnson v. Rodriguez*, 110 F.3d 299, 315 (5th Cir.1997). That makes this the opposite of a case in which jurisdiction is challenged by developments after the suit was filed. Certification of a class action comes after the suit is filed, so if the named .

plaintiffs lacked standing when they filed the suit, there were no other party plaintiffs to step into the breach created by the named plaintiffs' lack of standing; and so there was no case when class certification was sought. The danger that a class action will have to be dismissed for lack of standing of the named plaintiffs, even though unnamed members of the class might have standing, is another reason, besides those emphasized in *Mars Steel Corp. v. Continental Illinois National Bank & Trust Co.*, 834 F.2d 677, 680–81 (7th Cir.1987), and *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir.1988) (per curiam), for scrupulous adherence to the requirement that the determination whether to certify a suit as a class action be made "as soon as practicable after the commencement of the action." Fed.R.Civ.P. 23(c)(1). (It took three years for this case to be certified as a class action; but we do not have enough information to enable us to determine whether this was "as soon as practicable," given the circumstances.)

 *Whitlock v. Johnson*, 153 F.3d 380 (7th Cir.1998), illustrates the point that jurisdiction need not lapse just because the named plaintiffs drop out *after* the suit is filed. The case does not hold or imply, as our plaintiffs argue, that jurisdiction can be preserved even though the named plaintiffs lacked standing when the suit was filed. *Whitlock* was a suit alleging a denial of due process in prison disciplinary proceedings. After the suit was brought, the named plaintiff's challenge to his disciplinary sanction was rejected on the merits; there had been no denial of due process. But since his suit had at least had colorable merit when begun, jurisdiction had attached, albeit the original plaintiff was no longer a suitable class representative because he no longer had a stake in winning. Had his claim been frivolous, as the district judge found the claims of the named plaintiffs in this case to have been, we would have ordered the *Whitlock* suit dismissed, because a frivolous suit does not engage the jurisdiction of the federal courts. *Steel Co. v. Citizens for a Better Environment, supra*, —— U.S. at ——, 118 S.Ct. at 1010; *Korzen v. Local Union 705*, 75 F.3d 285, 289 (7th Cir.1996); *Beauchamp v. Sullivan*, 21 F.3d 789 (7th Cir.1994); *Nowak v.*

*Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir.1996). And it would not matter whether the claim was known at the outset to be frivolous. Until the judgment concluding a suit becomes final by exhaustion of all appellate remedies (and sometimes not even then, *In re Factor VIII or IX Concentrate Blood Products Litigation*, 159 F.3d 1016, 1019 (7th Cir. Oct. 19, 1998); *Disher v. Information Resources, Inc.*, 873 F.2d 136, 140 (7th Cir.1989)), the existence of jurisdiction over the suit can be challenged. *Morel v. INS*, 144 F.3d 248, 250 n. 3 (3d Cir.1998). Therefore the jurisdictional inquiry may be conducted at any time until the judgment becomes final in the sense just indicated. *Steel Co. v. Citizens for a Better Environment, supra*, —— U.S. at ——, 118 S.Ct. at 1011; *Levin v. Attorney Registration & Disciplinary Comm'n*, 74 F.3d 763, 766 (7th Cir.1996); *Autocephalous Greek–Orthodox Church v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 284 n. 7 (7th Cir.1990); *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir.1994).

A dictum in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), implies that if any members of a class, at the time the class action was certified, had standing, the requirements of Article III are satisfied even if the named plaintiffs were never members of the class. We don't think that this dictum, which is unelaborated, as well as buried in a footnote, can be considered authoritative; it is inconsistent with fundamental principles governing federal jurisdiction. But in any event there is no indication that any member of the plaintiff class in the present case sustained any greater injury by reason of the alleged unconstitutional blockage of access to the courts than the two named plaintiffs. So if the named plaintiffs lack standing—and we are about to see that they do—the dictum in *East Texas* could not keep the suit alive even if that dictum were a holding and so bound us.

 *Lewis v. Casey, supra*, on which the district judge based her decision to dismiss this suit for want of standing, holds that denial of access to the courts is not action-

able unless the plaintiff has suffered an injury over and above the denial. See also *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996). This is different from the approach taken by the courts to a claim that the plaintiff was denied a hearing in violation of the due process clause. Even if the hearing would not have resulted in any legal relief to the plaintiff, the improper denial of the hearing is an infringement of a right for which nominal damages can be awarded, and thus it is injury enough to support federal jurisdiction. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Buckley v. Fitzsimmons*, 20 F.3d 789, 796 (7th Cir.1994); *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir.1992); *Walters v. Reno*, 145 F.3d 1032, 1049 (9th Cir.1998). But in the case of a denial of access to the courts, the right infringed is so purely instrumental to the use of the courts to obtain legal relief—so entirely lacking in intrinsic value—that if the denial has had no effect on the legal relief sought by the plaintiff, no right has been violated. *Lewis v. Casey, supra*, 518 U.S. at 349–53, 116 S.Ct. 2174.

■ Does this mean that the plaintiff must prove that had it not been for his being denied access to the courts, he would have won at least one court case? Or is it enough, as the plaintiffs here argue and the language of the *Lewis* opinion suggests, *id.* at 353 and n. 3, 116 S.Ct. 2174; see also *id.* at 351, 116 S.Ct. 2174, that the blockage prevented him from litigating a nonfrivolous case? It seems to us that the latter is the correct position, and this for three reasons, although only the first is applicable to all cases in which a denial of access to the courts is alleged. This reason, mentioned in a footnote to the *Lewis* opinion, is that "arguable claims are settled, bought, and sold." *Id.* at 353 n. 3, 116 S.Ct. 2174. In other words, even if the claim, had it been pressed to judgment, would have failed, there is always a chance, provided the claim is not frivolous, that it would have been settled before then. We can disregard the fact that even pure nuisance suits founded on completely frivolous claims are sometimes settled on terms advantageous to the plaintiff. *Fisher v. Kelly*, 105 F.3d 350, 352–54 (7th Cir.1997); *Hooper v. Demco, Inc.*, 37 F.3d 287, 292 (7th Cir.1994). Frivolous

claims do not engage the jurisdiction of the federal courts even if the claims have some value in the litigation marketplace. But we shall encounter shortly an example of the "sale" of a claim, not argued to be frivolous, by the two named plaintiffs in the present case.

■ The second reason why a showing that the plaintiff had at least one nonfrivolous claim that he was blocked from pursuing should be enough to establish standing to complain about the blockage is to avoid having to try a case within a case, that is, having to determine, purely in order to resolve the threshold issue of standing, how the plaintiff would have fared had his claim been litigated. Trials within trials are sometimes unavoidable, as in cases of legal malpractice, e.g., *Mattson v. Schultz*, 145 F.3d 937, 938 (7th Cir.1998); *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267–68 (7th Cir.1994), but they are to be avoided where possible.

■ Third, in a case such as this in which injunctive relief is sought (as well as damages), it is not absolutely essential that the plaintiffs be able to show that they have lost meritorious cases as a result of the blockage of which they are complaining. It is enough if they can show that they are highly likely to have a meritorious suit in the future that they will not be able to litigate effectively because of the defendants' infringement of the constitutional right of access. A probabilistic harm, if nontrivial, can support standing. *Clinton v. City of New York*, —— U.S. ——, —— – ——, 118 S.Ct. 2091, 2100–01, 141 L.Ed.2d 393 (1998); *Bryant v. Yellen*, 447 U.S. 352, 368, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980); *O'Shea v. Littleton, supra*, 414 U.S. at 496–97, 94 S.Ct. 669; *North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1242 (7th Cir.1991); *City of St. Louis v. Department of Transportation*, 936 F.2d 1528, 1532 (8th Cir. 1991). In the usual case, the possibility of some day having a nonmeritorious suit will be too speculative to support a present request for an injunction. But we can imagine a case in which the plaintiff's claim has accrued but he has not sued as yet (perhaps blocked by the prison's unconstitutional be-

havior) and the statute of limitations hasn't run.

■ It is not enough for standing, however, for the plaintiffs to be able to point to claims that they might have pressed to victory had it not been for the restrictions that the defendants placed on their access to the courts. They must also show that their claims had been (or would be, if we are speaking of future claims) blocked by restrictions *that violate the Constitution.* We thus are dealing with a class of cases in which the issue of standing and the merits of the plaintiffs' claims are inseparable. See, e.g., *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 243 n. 5, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1222 (5th Cir.1992). The broader the constitutional right of access is interpreted to be, the more likely it is that the plaintiffs will lose cases because of its infringement; the narrower the right, the less likely its denial is to pinch. Suppose for example that a refusal to supply inmates with lawyers to represent them in any nonfrivolous lawsuits they wanted to bring infringed the constitutional right of access. If so (it is not so, *Lassiter v. Dept. of Social Services,* 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Zarnes v. Rhodes,* 64 F.3d 285, 288 (7th Cir.1995); *Farmer v. Haas,* 990 F.2d 319, 323 (7th Cir.1993); *Lavado v. Keohane,* 992 F.2d 601, 605–06 (6th Cir.1993)), then since a counseled inmate is more likely to win a suit than an uncounseled one, it would be apparent that the infringement would injure any inmate who had a nonfrivolous legal claim. True, the injury would be only probabilistic. The inmate's legal claim might be so simple, or so overpoweringly meritorious, that he could easily prevail with no legal assistance. But as the cases we cited earlier make clear, a probability of injury is enough to support standing to sue unless the probability is slight.

■ Standing and merits are intertwined in another way in this suit. If inmates who have nonfrivolous claims are unlikely to be impeded in pressing them to a successful conclusion by the acts or omissions alleged to deny their right of access to the courts, it is highly unlikely that those acts or omissions violate the right. See, e.g., *Madrid v. Gomez,* 150 F.3d 1030, 1041 (9th Cir.1998); *Norton v. Dimazana,* 122 F.3d 286, 291 (5th Cir.1997). It is a right of access that is in question and if access is not blocked, the right is not infringed. And that is this case.

■ Maximum security prisons are for the most dangerous prisoners. The segregation wards of these prisons are therefore intended for the most dangerous of the most dangerous. It would not be feasible to give these prisoners the run of the prison law library for hours on end. (Indeed it is customary to confine prisoners who are in segregation in their cells for 23 hours of the day.) Instead the Illinois prison authorities use a system of "runners"—messengers who bring law books, complaint forms, and other legal materials to the prisoners who are in segregation. These messengers are called "inmate law clerks" but their knowledge of law is rudimentary and anyway there are very few of them in proportion to the litigious inmate population. Many of the prisoners are functionally illiterate and so have great difficulty filling out complaint forms and other pleadings, reading judicial orders and opinions, and responding to motions, without assistance, and they can get very little assistance from the inmate law clerks. We may assume that this system is constitutionally inadequate, because the issue of constitutionality has not been argued to us; but we emphasize that it is only an assumption. Pressed at argument, the plaintiffs' counsel suggested that the Constitution requires every prison to hire a lawyer to train and supervise the staff of inmate law clerks that serves the prisoners in the segregation wards. Such a requirement would go far beyond the cases, which have declined to prescribe specific measures for compliance with the duty to assure prisoners' access to the courts. *Bounds v. Smith, supra,* 430 U.S. at 828, 830–32, 97 S.Ct. 1491; *Madrid v. Gomez, supra,* 150 F.3d at 1041; *Smith v. Shawnee Library System,* 60 F.3d 317, 322–23 (7th Cir.1995). But the question before the house is only whether the two named plaintiffs, Walters and Ganci, have been or are likely to be impeded in their access to the courts. Suppose Walters and Ganci were

disbarred lawyers (they are not). Then in all likelihood the system we have sketched would not have disabled them from litigating nonfrivolous claims, and then they could not maintain this suit, although a new suit could be filed by inmates who had been disabled by the system.

In her most recent decision, Judge Bucklo meticulously analyzed the legal claims that Walters and Ganci have asserted or tried to assert over the long course of this litigation and concluded that what she had earlier found to be the unconstitutional impediments to the use of the courts by inmates of the segregation wards had not impeded these two inmates. Walters, although he scores very low on tests of reading ability (and why should he not? What has he to gain from doing well on such tests?), has managed to file 13 suits (including the present one), most of these being suits under 42 U.S.C. § 1983 complaining about the conditions of his confinement. He has used complaint forms and other pleading forms that are provided to prisoners either by the prison or by the courts for bringing such suits and he has received occasional assistance from inmate law clerks. Although most of his suits have been unsuccessful, in none involving a nonfrivolous claim (an important qualification) has he been tripped up by the inadequacies of the "runner" system. Again, the present case is a good example—suggesting the paradox that ability to litigate a denial of access claim is evidence that the plaintiff has no denial of access claim!

 Two of Walters' suits were dismissed for want of prosecution after he failed to respond to inquiries from the court as to whether he wanted to continue with the suits after he had failed to respond to the defendants' motions to dismiss. There is no indication that these suits were colorable rather than frivolous; in one, for example, he merely claimed that he wanted to see a doctor for a kidney problem—and without more, such a claim is frivolous under the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). And so it is immaterial whether,

as he contends, he didn't respond to the court's inquiries because he didn't know how to. In another suit, this one joined by Ganci, Walters got a lawyer and, with the lawyer's assistance, won a $10,000 settlement. Presumably the suit was not frivolous; but as the plaintiffs had assistance of counsel, they can hardly complain of a denial of access to the courts.

In still another case, Walters had a lawyer who apparently persuaded him that the suit had no merit; it was voluntarily dismissed; in any event a lawyer is more aid in litigating than a prisoner is entitled to. In another case, after Walters' complaint was returned because he had filed it in the wrong federal district, he tried to file it in this court, and our clerk's office returned it to him with a letter advising him to seek the assistance of counsel. As it happened, Walters was at the time represented by counsel in the present suit. In light of this circumstance, the district judge disbelieved—as she was entitled to do, being the trier of fact—Walters' testimony that he did not know and could not discover the proper forum in which to file his complaint. Nor is there any indication that the complaint was nonfrivolous. It is pertinent to note that Ganci received assistance in filing one of his suits from a paralegal employed by his lawyers in this suit.

There is no need to discuss every suit filed by Walters or by Ganci, or Ganci's claims that he contends could have made meritorious lawsuits had he had more legal assistance. In every instance, as explained by Judge Bucklo, either the suit (or claim) has not been shown to have even arguable legal merit, or the plaintiff was not impeded in litigating it by any arguably unconstitutional practice or omission. The plaintiffs have failed to show that they would, to some reasonable probability, have fared better had the defendants taken the minimum steps—which do not include the provision of counsel—that would be necessary to bring their practices into conformity with the requirements of the Constitution as interpreted by the district judge. They have failed to show this even though they have been ably represented in the district court and in this court.

It is true that lacking the aid or sophistication of a lawyer, the plaintiffs could not be expected to put their best foot forward in those suits that they claim were unconstitutionally blocked or derailed short of victory; and the cases that were dismissed for want of prosecution or on other grounds might have been found by a lawyer to have merit. But these points would bear on standing only if there were a constitutional right to counsel in civil suits. The principle that the pleadings of pro se litigants are to be read liberally, *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Estelle v. Gamble, supra,* 429 U.S. at 106, 97 S.Ct. 285; *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), enables the legally unsophisticated plaintiff to get his foot in the courthouse door. If his pleadings reveal that a lawyer's assistance is necessary to enable the plaintiff to litigate his suit, then the judge can request a lawyer to represent the plaintiff. 28 U.S.C. § 1915(e)(1); *Mallard v. United States District Court*, 490 U.S. 296, 301–02, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *Forbes v. Edgar,* 112 F.3d 262, 264 (7th Cir.1997); *Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir.1997). This system worked for Walters and Ganci, and so the present suit was properly dismissed for want of standing, dooming the class action because they lacked standing when they filed the suit rather than losing standing after the class was certified. This does not bar the filing of a new case if counsel can locate inmates of the segregation wards of Illinois' maximum security prisons who, unlike Walters and Ganci, have been prevented from effectively litigating nonfrivolous claims by the practices alleged to deny the constitutional right of access to the courts. Since, however, the district court never acquired jurisdiction over the present suit, all previous rulings in this litigation in the district court should be vacated, *United States v. Munsingwear*, 340 U.S. 36, 39–41, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *Harris v. Board of Governors*, 938 F.2d 720, 723 (7th Cir.1991); *Illinois v. City of Chicago,* 137 F.3d 474, 478–79 (7th Cir.1998), in order to make absolutely clear that the earlier findings of unconstitutional conditions, having been made in a case over which the federal courts never obtained jurisdiction, can have no preclusive effect if a new lawsuit is filed. *Disher v. Information Resources, Inc., supra,* 873 F.2d at 140.

AFFIRMED.