UNITED STATES of America, Plaintiff,

v.

**Tony SILVA and Gila Daoud,
Defendants.**

**Appeal of David P. SCHIPPERS.**

No. 97–3003.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1998.

Decided April 9, 1998.

Sergio E. Acosta, Office of the U.S. Atty., Chicago, IL, for U.S.

David P. Schippers, Schippers & Bailey, Chicago, IL, for Tony Silva.

Daniel G. Martin, Office of the Federal Defender Program, Chicago, IL, David P. Schippers, Schippers & Bailey, Chicago, IL, for Gila Daoud.

David P. Schippers (argued), Schippers & Bailey, Chicago, IL, pro se.

Theodore N. Johnson, (argued), Godfrey, Neshek, Worth, Leibel & Conover, Elkhorn, WI, for Applied Forsenic Technologies Intern., Inc, and Steve Cain.

Before CUMMINGS, WOOD, JR., and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

David P. Schippers was appointed to represent Tony Silva under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. In connection with his representation of Silva, Mr. Schippers obtained expert services from Applied Forensics Technologies International, Inc. ("AFTI") and its owner and operator Steve Cain. Because Mr. Schippers believed that AFTI's subsequent attempts to obtain payment directly from him for those services was a violation of the CJA, he filed a Petition for a Rule to Show Cause why the district court should not hold AFTI and Mr. Cain in contempt. The district court denied Mr. Schippers' petition, and he now appeals. For the reasons set forth in the following opinion, we affirm the judgment of the district court.[1]

## I

### BACKGROUND

David Schippers was appointed by the district court in March 1995 to represent Tony Silva in his criminal prosecution. During discovery, the government produced audio tapes containing recorded conversations that allegedly implicated Silva. While listening to the tapes, Mr. Schippers and Silva noticed breaks and suspicious sounds that led them to question the integrity of the recordings. Subsequently, Mr. Schippers consulted with Steve Cain, an expert in audio recording

---

1. The decision of the district court is final for purposes of our appellate jurisdiction. See *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914 (7th Cir.1996).

authentication, and asked whether he thought expert review of the tapes was warranted. It is undisputed that Mr. Schippers informed Mr. Cain at that time that he was acting as appointed counsel under the CJA. Mr. Schippers also maintains that Mr. Cain has rendered services as an appointed expert under the CJA on prior occasions. Based on their conversation, Mr. Cain advised that an analysis of a sample of the tapes would be prudent.

In April 1995, Mr. Schippers requested authorization from the district court to retain Mr. Cain and his company to examine twelve of the tapes. The CJA permits appointed counsel to obtain such expert services if approved by the court. *See* 18 U.S.C. § 3006A(e)(1). Mr. Cain estimated that the cost of AFTI's analysis would be $2,000 per tape, for a total of $24,000. On April 14, 1995, Mr. Schippers submitted the authorization request with this cost estimate on the proper CJA form. The district court authorized the analysis on April 17, 1995, but reduced the number of tapes to be analyzed from twelve to five.[2]

Having received the district court's authorization, AFTI conducted a review of the tapes supplied by Mr. Schippers. These tapes did not contain the original recordings; they were copies. On May 2, 1995, Mr. Schippers received an invoice from AFTI for its review of the tapes in the amount of $9,250 ($1,850 per tape). He forwarded the bill to the court for payment on June 14, 1995. From this point, the parties' renditions of the facts diverge significantly.

According to Mr. Cain, the $9,250 bill was an initial invoice that covered only the analysis conducted on the copies of the government tapes; additional analysis of the original tape recordings was required in order to come to any reliable conclusion with respect to their authenticity. Upon obtaining the originals from the government, AFTI performed further tests and ultimately concluded that no tampering had occurred. AFTI contends that Mr. Schippers was aware that this additional analysis was being conducted and would be billed separately. On July 30, 1995, Mr. Cain submitted a final invoice to Mr. Schippers for $27,000. This bill included the unpaid $9,250 and an additional charge of $17,750 for the subsequent work on the original recordings.

In contrast, Mr. Schippers' understanding was that the $9,250 invoice covered the full cost of the work to be completed by AFTI. He appears to have based this conclusion on the fact that the $9,250 invoice amount corresponded to Mr. Cain's estimated cost of $10,000 that had been authorized by the district court. Moreover, Mr. Schippers asserts that experts in this field, such as Mr. Cain, are well aware that an opinion based on analysis of tape copies is essentially worthless because reliable conclusions may be derived only from the originals.

On July 28, 1995, Mr. Schippers reported to the district court that AFTI had completed its analysis and had concluded that the tapes were not compromised. Despite his alleged belief that the $9,250 invoice constituted the complete bill, Mr. Schippers submitted AFTI's July 30, 1995, invoice for $27,000 to the district court. This bill, like the previous one, was not paid.

At the repeated urging of AFTI, Mr. Schippers raised the issue of the unpaid bills in the district court during status hearings in November 1995 and May 1996. The court, expressing shock at the size of the invoice and skepticism of the value of the services rendered, stated in the May 1996 hearing that it would authorize payment only of the original estimated value ($10,000) and only after Mr. Cain provided additional supporting documentation for that amount.[3] From

---

2. The record before us does not disclose whether the chief judge of the circuit has approved the payment of this amount. *See* 18 U.S.C. § 3006A(e)(3).

3. The court, addressing the issue of payment, stated, "[I]sn't this the one where he suddenly, he submitted some bill for like $30,000 or something?" R.174, Ex.E1 at 2. Mr. Schippers explained that, "In the original one, Judge, he filed an estimate, and the estimate was $10,000 for the original work." *Id.* at 4. The court responded, "I will certify it for that amount." *Id.* Subsequently, the prosecutor informed the court that the value of the analysis of the tape copies was suspect. The court, after admitting to "some skepticism as to how much time could have been involved in all of this," stated that it would be a "good idea" for Mr. Cain to prepare a detailed report of the work that was completed. *Id.* at 6–7.

the record before us, confirmed by counsel at oral argument, it appears that payment of the $10,000 was not made.

In July 1996, AFTI filed suit against Mr. Schippers in Wisconsin state court; it sought recovery of the full $27,000. In response, Mr. Schippers petitioned the district court on December 24, 1996, for a Rule to Show Cause why AFTI should not be held in contempt on the ground that AFTI was violating the CJA by proceeding against him personally. The district court denied the petition. In its view, nothing in the CJA prevented Mr. Schippers from expending his own resources on expert services in the course of his appointed representation; moreover, the state action was an appropriate forum for determining whether he had agreed to such an arrangement. Mr. Schippers now appeals that decision.

## II

## DISCUSSION

■ We review the district court's ruling on Mr. Schippers' contempt petition for abuse of discretion. *See Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1154 (7th Cir.1994) (citing *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.1989)).[4]

**4.** Our cases frequently state that this court will not reverse a district court's ruling on a contempt petition " 'unless the result was clearly erroneous or unless we find an abuse of discretion.' " *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir.1993) (quoting *Laborers' Pension Fund v. Dirty Work Unltd., Inc.*, 919 F.2d 491, 494 (7th Cir.1990)); *see also Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.1989) (stating that ruling is not to be reversed "except for abuse of such discretion or unless clearly erroneous" (internal quotation omitted)); *Walaschek & Assocs. v. Crow*, 733 F.2d 51, 53 (7th Cir.1984) (same); *Jewel Tea Co. v. Kraus*, 204 F.2d 549, 551 (7th Cir.1953) (same). This oft-repeated statement of the standard obviously combines two separate standards of review that apply in different settings. The origin of the explication of the standard appears to be *Miller v. Zaharias*, 168 F.2d 1, 3 (7th Cir.), *cert. denied*, 335 U.S. 823, 69 S.Ct. 47, 93 L.Ed. 377 (1948), which states that "the action of the trial court upon a charge of contempt is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous." Although *Miller* does not cite any direct authority for this proposition, it may be that this standard

### A.

■ As this case comes to us, the central issue presented by the parties is whether an expert appointed and authorized under the CJA to provide services to an indigent defendant is precluded, by the terms of the CJA, from seeking to hold personally liable the appointed attorney that initially requests those services on behalf of his client. This is apparently a question of first impression not only in our circuit but in all circuits.

The CJA reposes authority in the district court to authorize and oversee payment for expert and other services. Under the Act, authorization for expert services may be sought by the defendant's attorney. *See* 18 U.S.C. § 3006A(e)(1) ("Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application."). The court may authorize services up to $1,000 on its own. *See* § 3006A(e)(3). However, amounts in excess of that figure must be certified by the court as necessary and approved by the chief judge of the circuit. *Id.* Once authorized, the government is generally the sole source of payment for services rendered unless the district court finds that funds are available from or on behalf of the defendant for this purpose. *See* § 3006A(f).[5]

developed because the contempt power is a broad one and it encompasses issues of both law and fact.

It suffices to articulate the abuse of discretion standard as the general standard of review in this area. The district court abuses its discretion when it makes an error of law or when it makes a clearly erroneous finding of fact. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990).

**5.** 18 U.S.C. § 3006A(f) provides:

**Receipt of other payments.**—Whenever the United States magistrate or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, ... to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement.... Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.

Mr. Schippers relies on § 3006A(f) to establish that AFTI and Mr. Cain may not pursue him for payment of its bills. Specifically, he reads the final sentence in § 3006A(f) to prohibit an expert appointed under the CJA from seeking payment from any source other than the government. That sentence provides that, "[e]xcept as so authorized or directed [by the court], no such person ... may request or accept any payment or promise of payment for representing a defendant." *Id.* In this context, "such person" includes AFTI and Mr. Cain, because they were "authorized pursuant to subsection (e) to render ... expert ... services." *Id.* Mr. Schippers asserts that AFTI's state court collection action against him violates § 3006A(f) because it is a request for payment for AFTI's representation of Silva other than that authorized by the district court.[6]

In response, Mr. Cain and AFTI submit that the provision upon which Mr. Schippers relies has no bearing on this situation. Section 3006A(f), they contend, was designed by Congress to allow the court to offset the government's costs for providing appointed representation to criminal defendants. In the event that the court determines that funds are available from or on behalf of a defendant to pay those costs, it may order that they be paid directly to the person or entity providing the service or to the court.[7] The prohibition in § 3006A(f), they continue, is designed to prevent attorneys or other persons appointed under the CJA from seeking payment from the criminal defendant in addition to that being obtained under the CJA. *See United States v. Wutthidetgrain-grai,* No. 95 Crim. 52(LAK), 1997 WL 778749, at *3, (S.D.N.Y. Dec. 18, 1997) (addressing claim that attorney appointed under

CJA violated § 3006A(f) for accepting payment from a third party absent court approval, but deciding case on other grounds). Because they have not sought any payment from Tony Silva, AFTI and Mr. Cain allege that no violation of § 3006A(f) exists in this case. Moreover, they assert, the CJA is silent on the question of whether an attorney may be liable for promising payment for expert services when the attorney fails to obtain proper authorization for those services pursuant to the CJA.

 In construing a statute, we look first to its language and employ its plain meaning to determine its import. *See, e.g., Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1346 (7th Cir.1994) (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661–62, 83 L.Ed.2d 582 (1985)). If the language is unambiguous, we need not resort to legislative history or other sources to glean the legislative intent of the statute. *See Orrego v. 833 West Buena Joint Venture,* 943 F.2d 730, 734 (7th Cir.1991). The language of § 3006A(f) provides that, if the district court finds "that funds are available for payment from or on behalf of a person furnished representation," the court may "authorize or direct" payment of those funds to various persons, including "any person or organization authorized pursuant to subsection (e) to render investigative, expert or other services." The last sentence of the subsection indicates that, except for this explicit process governed by the discretion of the court, no "such person" may "request or accept any payment or promise of payment for representing a defendant." The plain meaning of this sentence is that attorneys or other persons "representing" a defendant under the CJA[8] are prohibited

---

**6.** The term "representation" under the CJA includes expert services. See § 3006A(a) ("Representation under each plan shall include ... expert, and other services necessary for adequate representation.").

**7.** For a collection of cases addressing the circumstances under which appointed attorneys may obtain funds available to the defendant for representation, see Lewis J. Heisman, *Annotation, Propriety of Order Under Subsection (f) of Criminal Justice Act of 1964 (18 U.S.C.A. § 3006A(f)) Directing Payment by or on Behalf of Party for Services of Court–Appointed Counsel,* 51 A.L.R. Fed. 561 (1981).

**8.** We note that § 3006A(f)'s prohibition applies to certain persons—those that represent the defendant pursuant to the CJA or those that employ such a representative. We need not determine, therefore, whether a different analysis might be required if an expert was retained by an appointed attorney without any reference to the CJA and without prior court approval. We do not decide today whether such an expert might have an action grounded in state law against the appointed attorney who retained him under such circumstances.

from seeking payment for their services from sources other than the government without the approval of the district court. This provision prevents the augmentation of their CJA remuneration in any way, including the formation of side agreements with the defendant or with others.[9]

We think that this reading of the statute is also compatible with the manifest purpose of the CJA. The Act places upon the district court the responsibility to determine whether the defendant's lack of financial resources and his need for an adequate defense requires the expenditure of government funds. If the court determines that the defendant is eligible for government funds, it has the continuing responsibility to ensure that those funds are expended in conformity with the statutory plan. To assist the court in the exercise of that authority, the statute requires, in the sentence that is the focus of our review here, that no individual receiving compensation from the government also receive compensation from another source without the permission of the court. This requirement ensures the protection of the government from the unnecessary expenditure of funds when other sources are available to the defendant. It also protects that defendant from demands to augment the compensation of those who have agreed to render services within the framework of the CJA. Even when, as here, the side agreement is between third parties, the possibility of eventual pressure on the defendant or on others on his behalf to reimburse that attorney for the expenditure is a substantial danger that Congress obviously intended to curb.

### B.

■ AFTI and Mr. Cain's suit in state court against Mr. Schippers for the amount billed for the analysis of the tapes clearly falls within the statutory prohibition. It con-

stitutes an impermissible attempt by "such persons" described in the statute to obtain payment other than that approved by the district court. AFTI acknowledges that it undertook the audio tape analysis pursuant to the CJA.[10] Mr. Cain provided an estimate to Mr. Schippers for the purpose of seeking court approval for his company's proposed work. The court, in reliance on that estimate, authorized analysis of five tapes. In this setting, AFTI is an "expert" authorized to render services pursuant to § 3006A(e)(1). Consequently, it is prohibited by the terms of § 3006A(f) from seeking payment other than its authorized CJA compensation without the express permission of the district court.

The district court based its decision on a misapprehension of the extent of its authority under the CJA. Nevertheless, we must affirm its judgment because, on the record before us, Mr. Schippers has not made out a case for contempt. It does not appear that Mr. Shippers' petition is based on a violation by Mr. Cain or AFTI of any specific order of the district court. *See Goluba v. School Dist. of Ripon,* 45 F.3d 1035, 1037 (7th Cir.1995) ("To win a motion for civil contempt, a party must prove by clear and convincing evidence that the opposing party violated a court order." (internal quotation omitted)); *D. Patrick, Inc. v. Ford Motor Co.,* 8 F.3d 455, 460–61 (7th Cir.1993) (holding that a settlement agreement is not a court order and therefore a violation of the settlement agreement would not subject a party to contempt).

■ Our ruling today does not preclude Mr. Schippers from asking the district court for other more appropriate relief. The district court may protect its authority to supervise the administration of CJA services by the use of its authority under the All Writs Act. *See* 28 U.S.C. § 1651(a); *see also United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977)

---

9. There is little legislative history on § 3006A(f); however, the sectional analysis of that provision in the original bill (then subsection (e)) supports this understanding of the statute's language. The committee's report provides:

Subsection (e) provides that the court shall make allocation of available funds among appointed counsel, organizations making counsel available, and persons authorized to perform nonlegal services, and no such person or organi-

zation is permitted to request or accept payment in addition to those so allocated.
H.R.Rep. No. 88–864, Sec. Analysis (1963), *reprinted in* 1964 U.S.C.C.A.N. 2990, 2993.

10. In a letter sent by Mr. Cain to Mr. Schippers on AFTI letterhead, Mr. Cain stated that, "[y]ou assured me I would be compensated under CJA funding." R.174, Ex.D1.

("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained...."); *In re VMS Litig.,* 103 F.3d 1317, 1324 (7th Cir.1996) (noting courts' approval of "a district court's use of the All Writs Act to prevent litigants from frustrating or circumventing its orders"); *cf. Hillman v. Webley,* 115 F.3d 1461, 1468 (10th Cir.1997) ("[W]here a state court action threatens to frustrate a settlement order entered by a federal court ..., federal courts have typically utilized the All Writs Act ... to issue orders in the class action enjoining class members from pursuing state court actions that would conflict with the settlement order."); *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 524 (5th Cir.) ("The All Writs Statute and the relitigation exception to the Anti-Injunction Act permit a federal court to issue an injunction to prevent state litigation of issues or claims presented to and decided by it to protect or effectuate its judgments." (internal quotation omitted)), *cert. denied,* 513 U.S. 1014, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994); *In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir.1985) ("[F]ederal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." (internal quotation omitted)).

### Conclusion

■ The clear language of the CJA directs that an expert retained under its auspices may not seek payment from a source other than the district court except as that court may authorize or direct. Here, however, the other prerequisites for an adjudication of contempt are not present. Accordingly, the district court's decision denying the Petition for a Rule to Show Cause is affirmed.

AFFIRMED.

