## In re FACTOR VIII OR IX CONCENTRATE BLOOD PRODUCTS LITIGATION,

**Appeals of Roy G. Spece, Jr., Rose Marie Ibanez, and Mull & Mull.**

### In re MULL & MULL.

**Nos. 98–1438, 98–1770 and 98–1629.**

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 8, 1998.

Decided Oct. 19, 1998.

Rehearing Denied Nov. 4, 1998.

Robert E. Arceneaux (submitted), Barham & Arceneaux, New Orleans, LA, for Mull & Mull.

Fred T. Magaziner, Dechert, Price & Rhoads, Philadelphia, PA, for Baxter Healthcare Corporation.

David I. Bell, Knapp, Peterson & Clarke, Glendale, CA, for Alpha Therapeutic Corporation.

Geoffrey R.W. Smith, Washington, DC, for Bayer Corporation.

Sara J. Gourley, Sidley & Austin, Chicago, IL, for Rhone–Poulenc Rorer, Incorporated, Armour Pharmaceutical Company.

David S. Shrager, Shrager, McDaid, Loftus, Flum & Spivey, Philadelphia, PA, pro se, Dianne M. Nast, Roda & Nast, Lancaster, PA, pro se Amicus Curiae and for Susan Walker, and Members of the Class.

Roy G. Spece, Jr., Tucson, AZ, pro se.

Rose Marie Ibanez, Tucson, AZ, pro se.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

POSNER, Chief Judge.

Five years ago, a nationwide class action was filed on behalf of hemophiliacs who had been infected in the early 1980s with AIDS virus (HIV) contained in blood solids manufactured and sold by the defendant drug companies for the treatment of hemophilia. Blood solids are manufactured from blood sold or donated to blood banks, and the defendants had failed either to screen the blood for HIV or to process the blood in a way that would kill any HIV in it. The class claimed that the defendants were negligent in not taking these precautions. After we granted mandamus, on grounds unnecessary to recite here, to decertify the class, *In re Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir.1995), the parties' lawyers continued to negotiate over a mass settlement of the estimated 6,000 suits that either had been or were expected to be filed by or on behalf of infected hemophiliacs. The negotiations resulted in the certification of the class, though this time for settlement only, and the entry, last year, of a consent decree. The decree

provided that each member of the class who was willing to release the defendants from liability would receive $100,000 net of attorneys' fees and that the defendants would establish a $40 million fund out of which attorneys' fees would be paid in amounts to be determined by the judge. The decree extinguished the rights of the lawyers for those class members who signed a release to enforce their contingent-fee contracts with such members, because it provided that "no attorney's fee shall be payable by any class members other than those fees approved by the Court to be payable from the [$40 million] fund." Contingent-fee contracts generally entitle the lawyer to 33 to 40 percent of any judgment or settlement. In the case of a settlement that yielded a net of $600 million to the claimants, this would mean lawyers' fees of $300 to $400 million (since a gross settlement of $900 million would yield the claimants $600 million if their lawyers were entitled to 33 percent), not $40 million, actually less than $40 million since the fund was to be the exclusive source of court costs as well as attorneys' fees.

The few appeals from the consent decree were voluntarily dismissed. The process of obtaining releases from members of the class began and is now substantially completed, with some 5,200 class members having executed releases and been paid $100,000 each. Several hundred of these class members are represented by the lawyers who have filed, on their own behalf and not on behalf of their clients, the two appeals and the petition for mandamus that are before us for decision today.

These lawyers accuse the lawyers for the class and for the defendants—groundlessly, as far as we can tell—of defamation, bait-and-switch tactics, hoodwinking, infamy, dishonesty, illegality, intimidation, extortion, hypocrisy, hysteria, and Marxism. Yet they did not oppose the settlement. They objected initially to the amount of the settlement but their objection was rejected after a hearing and they did not renew their opposition or appeal from the consent decree, of which their clients have, as we have noted, taken full advantage. And at no time did they object to the attorney's fee provision of the settlement. Only after the time for appealing from the consent decree had run did these lawyers advise the district court of their view that the consent decree was invalid insofar as it limited their fees and barred them from trying to enforce their contingent-fee contracts with their clients. They also instituted collateral attacks on the settlement in the state courts of Louisiana, which resulted in a temporary cessation of payments by the defendants to the clients of these lawyers. The district judge responded to these shenanigans by enjoining the lawyers from attempting to enforce their contingent-fee contracts or liens based upon them, and he declared the contracts void to the extent that they are inconsistent with the consent decree. The lawyers have challenged his actions both by appealing and by seeking mandamus.

The injunction is appealable without regard to finality, 28 U.S.C. § 1292(a)(1), and if the appellants are correct that the consent decree is "void," then the injunction, being ancillary to it, would fall with it. If the consent decree were truly void, the injunction based on it would presumably also be void, and so unappealable because a void order imposes no obligations; but in that event mandamus would lie to vacate the injunction. *DDI Seamless Cylinder Int'l, Inc. v. General Fire Extinguisher Corp.*, 14 F.3d 1163, 1166 (7th Cir.1994). The settlement embodied in the consent decree may well be questionable, both in its form (cf. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), disapproving "settlement classes," albeit in different circumstances from those of this case) and in its terms. That *all* the members of the class should receive the *identical* payment, even though the strength of their cases (some of which appear to be barred by the statute of limitations) and the amount of their damages must vary greatly, is downright weird. But there is no question of the district court's having exceeded its jurisdiction in entering the decree. All the requirements of Article III were satisfied.

Even if they had not been, it is unlikely that the settlement could be set aside at this late date. The appellants argue

that "when subject matter jurisdiction is lacking or due process has been denied, the final judgment is void, and its nullity must be recognized in any collateral proceeding in which it is asserted as binding." This is an overstatement. The principle that jurisdictional defects may be noticed at any time is limited, as we explained in *In re Edwards*, 962 F.2d 641, 644 (7th Cir.1992), by the equally important principle that litigation must have an end. After a case has become final by exhaustion of all appellate remedies, only an egregious want of jurisdiction will allow the judgment to be undone by someone who, having participated in the case, cannot complain that his rights were infringed without his knowledge. *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *In re Edwards, supra*, 962 F.2d at 644; *Restatement (Second) of Judgments* § 12 (1982). (On the significance of participation, see, e.g., *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir.1998).)

The practical wisdom of this rule is shown by the present case. The defendants have paid out more than $500 million. Are they now to go around to all 5,200 class members whom they have paid and ask for their $100,000 back so that this litigation can return to its starting point? Not that the appellants are asking for this. They just want more fees. But the $40 million cap on attorneys' fees was an important part of the deal from the defendants' standpoint, given their commitment to pay each class member a net of $100,000. So that the attorneys' fees would have to come out of the defendants' pockets. If the cap is to be lifted, the entire settlement must be rescinded and the parties returned to square one by the return of the moneys paid out under it. This would also have to happen if the appellants decided to seek additional fees not from the defendants but from their own clients; the defendants wouldn't care, but of course the clients would be entitled to rescind their releases, which had been premised on the receipt of $100,000 net.

We are mindful that Fed.R.Civ.P. 60(b)(4) authorizes, and the cases interpreting it require, "void" judgments to be set aside at any time. *United States v. Indoor Cultivation Equipment*, 55 F.3d 1311, 1317 (7th Cir.1995); *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir.1986). But set aside *by the district court*; it is there that the motion must be filed; and the appellants have never filed such a motion. But we don't want to give them false hopes. They will gain nothing by trying to file such a motion in the future. For "void" is just the name we give to those judgments that can be set aside without regard to the usual limitations on challenging judgments after they have become final by exhaustion of appellate remedies; and as the authorities cited earlier make clear, a judgment is not to be pronounced void merely because the court that entered it may not have had jurisdiction. And, needless to say, substituting for a 60(b)(4) motion in the district court a petition for a writ of mandamus in the court of appeals (cf. *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 662 (7th Cir.1978); *Cinerama, Inc. v. Sweet Music, S.A.*, 482 F.2d 66, 71 n. 3 (2d Cir.1973) (Friendly, J.)) shouldn't enlarge the meaning of "void." Indeed, given the rule, the only occasion for using mandamus—a last resort, a safety hatch where no other vehicle for obtaining judicial relief is available, e.g., *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam)—to get rid of void judgments would be where Rule 60(b)(4) relief had been sought in the district court and denied there, and the order denying it was unappealable, as in *Moses v. Banco Mortgage Co.*, 778 F.2d 267, 275 (5th Cir.1985). That is not this case.

Rule 60(b)(3) allows judgments to be set aside on the ground of fraud, and the appellants argue that the settlement was procured by fraud. But this rule (unlike 60(b)(4)) has a time limit of one year, which the appellants have now exceeded, for as we have said they never filed a Rule 60(b) motion, and so it is now too late for them to file such a motion bottomed on subsection (3). Anyway their allegations of fraud are fantastic and even preposterous. The most fantastic is the claim by one of them that he was on the verge of negotiating a $1.8 billion settlement with the defendants when the class lawyers

by a dastardly maneuver preempted him by agreeing to accept a measly $600 million. If this were true, which we do not for a moment believe, the lawyer would have been ethically obligated, as well as impelled by powerful motives of self-interest, to bring this to the attention of the district judge in the hearing that the judge conducted (and the lawyer attended) on the fairness of the proposed settlement.

Even if *someone* might have been or might still be able to challenge the settlement, presumably someone who had not had notice of or a fair opportunity to participate in the proceeding yet had been adversely affected by it, it is not these lawyers. Having participated in the settlement proceeding and having failed to make timely objection to it, they are barred by the principles of waiver and equitable estoppel from challenging the settlement after it has become final and the defendants have paid and the class members have received hundreds of millions of dollars. *Skelton v. General Motors Corp.,* 860 F.2d 250, 259 (7th Cir.1988).

Since the settlement stands, the judge's power to issue the injunction (and related declaratory relief) against these lawyers' enforcing the contingent-fee contracts or liens based upon them was a proper exercise of the court's jurisdiction under 28 U.S.C. § 1651 ("all writs") to prevent interference with its orders. E.g., *United States v. New York Telephone Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977); *Williams v. General Electric Capital Auto Lease, Inc., supra,* 159 F.3d at 275; *United States v. Silva,* 140 F.3d 1098, 1103 (7th Cir.1998); *In re VMS Litigation,* 103 F.3d 1317, 1324 (7th Cir.1996); *In re Agent Orange Product Liability Litigation,* 996 F.2d 1425, 1431 (2d Cir.1993). The settlement agreement guaranteed all acceding class members $100,000 free of attorneys' fees. The appellant lawyers are now claiming the right to sue their clients for a third or more (whatever the contingent-fee contract provides) of the $100,000. This claim is not only a dagger aimed at the heart of the settlement and therefore properly enjoinable; it raises serious ethical concerns. Having induced their clients to sign releases under

the impression that the consideration for the release was $100,000 net, the lawyers now assert a right to turn on the clients and take for their own benefit a substantial fraction of that purportedly net recovery. It is true that they *don't* want to sue their clients, or even to undo the settlement; they would be quite content to take the $15 million or so that they think their contingent-fee contracts entitle them to out of the $40 million costs and attorneys' fees fund, and indeed would greatly prefer this route to having to sue hundreds of individuals. But if they did get what they are seeking out of the fund, the settlement would come apart, to the detriment of their clients, because there wouldn't be enough money for the other lawyers. In any event, the appellants' insistence that notwithstanding the consent decree the contingent-fee contracts remain valid and enforceable—which means enforceable against the clients who signed them—created a sufficient danger to the clients (as well as causing the delay in payment to them that we mentioned earlier) to warrant the district court's enjoining these lawyers from trying to enforce the contracts.

The order of the district court is

AFFIRMED.