In re SYNTHROID MARKETING LITIGATION.

No. 99 C 6017.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 14, 2000.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

This case poses the problem of what a court is to do when nonparties in class action cases apparently attempt to cash in on a settlement reached by the parties by sending misleading communications to class members. In October 1999, I gave preliminary approval for a settlement agreement in this class action lawsuit concerning antitrust and related violations in the marketing of Synthroid, a brand name for a thyroid medicine. (The settlement has not been finalized.) On December 28, 1999, the National Prescription Association ("NPA"), based in New Jersey, sent to various class members the letter that is the subject of this opinion. A number of the Third Party Payor class members (as well as Defendants) seek to have me enjoin further such communications and remedy any confusion with a court-approved communication to the parties who have received NPA's letter. I grant the motion in part and deny it in part.

The NPA is not a party to this case. Along with a number of other individually represented companies, it moved to intervene in December 1999, a motion I denied on December 21, a week before it sent the letter at issue. The letter was sent to certain members of the Third Party Payor class. At a hearing on this motion on February 3, 2000, NPA's attorneys were unable to say to whom the letter was sent and how many of the class members received it.

The letter was, as NPA's attorney admitted, misleading—one of NPA's lawyers called it a "botch." (It was, however, signed by one Allen P. Langjahr, Vice President and General Counsel to NPA, and a member of the New Jersey bar (admitted 1984).) Incidentally understating by a half million dollars the total amount of the settlement that if approved would be distributed to the Third Party Payor class, the letter states that NPA is "pursuing claims" against the Defendants "in connection with certain payments processed by NPA ... or on behalf of various health benefit plans." It then says that unless the Third Party Payor class members respond to the letter by filling out NPA's opt-out form by one of several deadlines in January, none of which correspond to the January 24, 2000 opt-out date I set, NPA **"will proceed with the investigation, litigation, and any settlement negotiations on your behalf"** (boldface in original). Most strikingly, it says that "in event of recovery under the proposed settlement, ... your plan will receive a proportionate share of any monetary recovery. NPA's administrative fees of 22% will be deducted from NPA's aggregate recovery amount ...."

Needless to say, so far as the proposed settlement goes, each class member that is entitled to some part of it might file for its share itself, and need not pay NPA 22 percent of anything. Moreover, there are no "claims" to be "pursued" under the proposed settlement, but only monies to be claimed by parties entitled to those monies. NPA, further, is not the legal representative of anyone, because it is not an attorney, and so it cannot pursue claims, engage in any litigation, or take part in settlement negotiations on anyone's behalf but its own. And it is not a Third Party Payor, and therefore not a class member. Finally, the settlement negotiations are over for this round. We have a proposed settlement that I have tentatively approved. The remaining litigation, such matters as this apart, involves dealing with

the objections to the proposed settlement. I remark that NPA has lodged an objection.

If the letter is construed as an attempt to offer legal representation or advice by a non-lawyer, it may constitute unauthorized practice of law. Worse, the letter can be read as an attempt to skim off, by false pretenses, 22 percent of the amount due to some of the Third Party Payor class members. That might well constitute mail fraud or attempted mail fraud as well as violations of various state fraud statutes.

NPA's attorneys say that nothing of the sort is going on. According to them, NPA is a perfectly legitimate enterprise that provides administrative services to benefit plans that are too small and thinly staffed to provide such services themselves. It also provides administrative services relating to prescriptions for insurers, including large companies, some of them among the Third Party Payor class members. NPA says it also monitors settlements to which its clients might be entitled, but either would not receive notice for some reason or would not be able or inclined to file claims on their own. In return for this service NPA charges a fee.

At the hearing on the motion for an injunction, NPA counsel represented that the letter had gone only to its clients. In a subsequent declaration filed by its corporate counsel, Mr. Langjahr, however, NPA says the letter went both to current and former customers. There can be no doubt, therefore, that the purpose of the letter was to solicit business and apparently thereafter, on the basis of lack of response, to claim that all of these past and present customers had agreed to allow NPA to file claims on their behalf, and to take 22 percent of the recovery for itself.

At the hearing NPA made the further statement that its clients would have understood the letter and not been misled by it and that it referred to services they had contracted for and expected to pay for. Accordingly, I ordered NPA to produce the contracts it relied on for its authority. NPA complied with my directive only in part. It produced what it says is a sample "but not exclusive" contract, but it did not produce actual contracts with any client and it is unclear whether this contract is in fact the contract with any of the persons to whom it sent the December 28 letter. I have read the sample contract, however, and find nothing in it that would give NPA authority to represent any of the recipients of the letter in this litigation or to claim a 22 percent fee.

Despite this, NPA has authored a proposed corrective letter that it proposes to send to the recipients of the first letter. The letter does state that it will only represent those who affirmatively inform NPA that it wishes it to represent them, and it reduces its fee to 15 percent "subject to the Court's authority" (is that different from approval?). According to the letter, if recipients respond by giving NPA authority, it will file a claim form on their behalf. One thing the letter does not say, however, is that NPA in fact has filed an objection to the settlement. Furthermore, I agree with Defendants that the introduction to the letter, which indicates it is being sent by order and approval of the court, can and might be interpreted by customers as indicating approval of NPA's role. I conclude that the letter should not be sent.

■ It is apparent, however, that some corrective communication needs to be sent. According to the declaration NPA has now filed, the letter was sent to 500—600 entities. It is possible that some of them did nothing intending that NPA should act on their behalf either because they had no objection to NPA's proposed terms or because they believed this was what they had to do to participate in the settlement. If so, they may not file claims or do anything else that they might have done but for NPA's letter. Others may have been so confused by the apparent inconsistencies between the Notice of Proposed Settlement and NPA's letter that they declined to act thinking it would be too much trouble. An order giving clarification will therefore be sent to those who received the letter. Because of the delay, a slight variation in dates upon which the class members need to act (with explanation) will be made. A copy of the order is appended to this opinion. The order is to be sent out, by first class mail, by the Third Party Administrator or counsel for Defendants within three days of this date to each of the entities

receiving the December 28 letter. The list of recipients of the earlier letter, previously filed under seal, will be provided to counsel for Third Party Payors and Defendants, and can be picked up at the office of this court's courtroom deputy. The names and addresses, as I informed counsel at the hearing on this matter, will be for counsel's eyes only (and the Third Party Administrator).

■ Because I believe that the corrective order will solve the problems relating to NPA's December 28 letter I decline at this time to enter the injunction sought by the Third Party Payors and Defendants. If this does not suffice I will take further action as necessary. An injunction, where necessary to protect the court's earlier orders, including preliminary approval of the settlement of this class action, is authorized under the All Writs Act, 28 U.S.C. § 1651(a). That power extends to non-parties. *United States v. New York Tel. Co.*, 434 U.S. 159, 174, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977); *United States v. Silva*, 140 F.3d 1098, 1104 (7th Cir.1998).

Under the authority granted me to manage the case by Fed.R.Civ.P. 23(d)(2) & (5), I will have an order sent to the class members who received the December 28 NPA letter, providing them with correct information about what they need to do if they wish to either participate in, object to or opt out of the proposed settlement. The order (a copy is attached hereto) will inform the recipients that they may utilize the services of NPA or other administrators if they choose. The order should remedy the problem, and I therefore deny the motion to enjoin further communications between NPA and the class members.

### *ORDER*

To Potential Third Party Payor Settlement Class Member:

You may have received a letter from National Prescription Administrators, Inc. ("NPA") regarding the *Synthroid Marketing Litigation* and claims procedure under a proposed settlement on behalf of Third Party Payors.

THIS ORDER IS SENT TO CORRECT ANY CONFUSION OR MISUNDER-STANDING RESULTING FROM NPA's LETTER.

1. A proposed class action settlement in the amount of $45.5 million plus accruing interest has been reached for the benefit of a Third Party Payor Class. In order to share in the settlement proceeds, a Claim Form must be filed by or on behalf of your company or plan postmarked no later than March 15, 2000. (This date has been extended from the date stated in the Notice of Proposed Settlement and Claim Form due to concern that NPA's letter may have resulted in confusion.)

a. You may prepare the Claim Form yourself, at no additional cost to you. You should have received a Notice of Proposed Settlement and Claim Form in the mail. If not, contact the "Synthroid Third Party Payor Settlement Administrator" at:

Tilghman & Co., P.C.
P.O. Box 12985
Birmingham, Alabama 35202–2985
(800)414–4370

and a Notice and Claim Form will be sent to you within 24 hours. If you have questions concerning the Claim Form, you should direct them to the attorneys for the Third Party Payor Settlement Class listed in the Notice.

b. NPA and other entities may offer to file a claim on your behalf. You are not obligated to accept such services, though you may if you choose to affirmatively give NPA or another entity the authority to file a claim on your behalf. Neither NPA nor any other entity may deduct any administrative fees from your share of the settlement without the prior approval of the Court.

c. If the settlement is approved by the Court, by filing a Claim Form and receiving a check you will release all of your claims against the Defendants in connection with the marketing of Synthroid.

2. If you were a recipient of a communication by NPA regarding this litigation, and do not wish to share in the settlement fund and be bound by the release of claims if the settlement is approved, you may opt out of

the Third Party Payor Settlement Class by doing so by March 6, 2000,* in accordance with the procedure in the Notice of Proposed Settlement. If you opt out, you will not be able to share in this settlement, and you will be free to pursue your claims against the Defendants on your own behalf.

3. If you were a recipient of a communication by NPA regarding this litigation, and do not opt out, you may object to the settlement, and/or the request of the attorneys for the Third Party Payor Class for an award of attorneys' fees by filing and serving your objection in accordance with the procedure in the Class Notice by March 6, 2000.*

**YOU SHOULD REFER TO THE COURT'S NOTICE OF PROPOSED SETTLEMENT AND CLAIM FORM FOR A FULL DESCRIPTION OF THE SETTLEMENT AND THE CLAIMS PROCEDURE.**

* This date is an extension of the date stated in the Notice of Proposed Settlement.